IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BARBARA SUE CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15cv883-CSC |
| | ) | (WO) |
| CAROLYN W. CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that she was

unable to work because of a disability.  Her application was denied at the initial

administrative level.  The plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the

plaintiff was not under a "disability" as defined in the Social Security Act, and denied the

plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.

The ALJ's decision consequently became the final decision of the Commissioner of Social

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

Security ("Commissioner").[2]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next
question, or, on steps three and five, to a finding of disability. A negative
answer to any question, other than step three, leads to a determination of "not
disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court

must find the Commissioner's decision conclusive if it is supported by substantial evidence.

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial

evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of

the record which supports the decision of the ALJ but instead must view the record in its

entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the
reasonableness of the [Commissioner's] . . . factual findings . . . No similar
presumption of validity attaches to the [Commissioner's] . . . legal
conclusions, including determination of the proper standards to be applied in
evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).
The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately
cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A. Introduction.**  The plaintiff was 52 years old at the time of the hearing before the ALJ and had completed the eighth grade.  (R. 24, 39).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "chronic obstructive pulmonary disease (COPD), status post arthroscopic surgery of bilateral knees, osteoarthritis of knees, bilateral knee edema no (sic) otherwise specified, morbid obesity, and dysthymic disorder versus major depressive disorder."  (R. 13).  Her prior work experience includes work as a cashier.  (R. 24).  The ALJ concluded that Carroll could perform her past relevant work, and thus, she was not disabled.  (*Id*.).  In the alternative, relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Carroll could perform.  (R. 24-25).  Consequently, the ALJ concluded that she was not disabled. (R. 25-26).

**B.  Plaintiff's Claims.**  Carroll presents three issues for the court's review.  As stated by the plaintiff, the issues are as follows:

1.  The Commissioner failed to fully and fairly develop the medical evidence.

2.  The Commissioner failed to sufficiently assess Ms. Cameron's (sic) credibility.

3.  The Commissioner improperly determined the claimant's residual functional capacity (RFC).

(Doc. # 18 at 5-6).

4

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**A. Fully and Fairly Develop the Record.** Carroll first argues that the ALJ failed to properly develop the record when he failed to reconcile an ambiguity in the opinion of the

consultative examiner.  (Doc. # 18 at 6-7).  On January 21, 2014, Carroll underwent a consultative physical examination by Dr. Oluyinka Adediji. Dr. Adediji observed the following.

> Station is normal, walks with reduced stance with no ataxia, Gait is antalgic without and any assistive devise (sic).  She uses Cane on Rt hand periodically but able to walk without one.

> Minimal problems getting on and off examination table.  No regional or generalized spasticity.  Squatting observed with no difficulty.

> Claimant stands/walks on heels and toes with minimal difficulty.

> Claimant walks in tandem satisfactorily.  Romberg is negative.

(R. 433).

Dr. Adediji noted knee joint pain with active and passive range of motion but "no palpable effusion, tenderness or increased warmth bilaterally."  (R. 434).  There was "[p]alpable crepitus bilaterally," but no effusion.  (*Id*.)  Based on his examination, Dr. Adediji diagnosed "Bilateral Knee Pain: Osteoarthritis." (R. 435).  Dr. Adediji observed that "[p]ain is the main limiting factor is pain. (sic)  She would need knee protective restrictions like sitting job and avoidance of prolonged standing or repetitive climbing and kneeling." (*Id*.) Dr. Adediji then completed a medical source statement detailing Carroll's physical abilities.  (R. 436-441).  Dr. Adediji opined that Carroll could sit for three hours at one time without interruption, stand for thirty minutes at one time  without interruption, and walk for thirty minutes at one time without interruption.  (R. 437).  He further opined that

6

Carroll could sit for six hours total in an eight hour work day, stand for three hours total in an eight hour work day, and walk for three hours total in an eight hour work day. (*Id*.) The ALJ gave significant but not great weight to Dr. Adediji's opinion specifically reducing Carroll's RFC to light work because of "a limitation to standing and/or walking one hour without interruption and a total of six hours is consistent with Dr. Adediji's conclusion that claimant could engage in each for 30 minutes at a time and a total of three hours." (R.23).

According to Carroll, Dr. Adediji's opinion is ambiguous.

> Dr. Adediji stated in his consultative examination (CE) report Ms. Carroll "would need knee protective restrictions like sitting job and avoidance of prolonged standing . . .etc. Tr. 435. However, in his Medical Source Statement of Ability To Do Work-Related Activities (MSS), he states she could walk three hours total in an eight hour day and stand three hours total in an eight hour day. Tr. 437.
>
> When taken without Dr. Adediji's opinion that Ms. Carroll would need "a sitting job," his MSS is ambiguous, as it is unclear whether Dr. Adediji was asserting that Ms. Carrol (sic) could **either** stand **or** walk three hours total in an eight hour day, or whether he was asserting that she could do **both**, stand for three hours **and** walk for three, for a total of six hours in an eight hour day. However, when taken in context with the statement regarding the need for a sitting job, it appears the MSS was intended to imply sedentary restrictions on walking, standing, and sitting. The ALJ appears to have interpreted the MSS to mean Ms. Carroll could walk for three hours and stand for three hours, with a combined total of six hours on her feet as the ALJ afforded Dr. Adediji's opinion significant weight and uses it to justify a light RFC. Tr. 23. The ALJ never addresses the conflict or ambiguity, nor made any attempt to resolve it. This ambiguity/inconsistency is critical in this case because, if adopted by the ALJ, these restrictions likely result in a favorable decision, as the Medical Vocational Grid Rules direct a finding of disabled should Ms. Carroll be found unable to perform activities at the light level of exertion.

(Doc. # 18 at 6-7).

Although Carroll complains that there is an ambiguity in Dr. Adediji's source statement, the ALJ was not required to accept Dr. Adediji's opinion in whole in forming Carroll's RFC. Jobs in the category of light work require "a good deal of walking or standing," *or* "sitting most of the time." 20 C.F.R. § 404.1567(b) (emphasis added). More importantly, however, Carroll's argument is based on inference, "extrapolation and conjecture [which] remains insufficient to disturb the ALJ's RFC determination, where it is supported by substantial evidence." *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). The ALJ evaluated the evidence before him which led him to conclude that Carroll could perform light work with limitations. The RFC adequately accounts for Carroll's limitations, and it is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Id*. at 1211.

While the ALJ has the responsibility to determine the plaintiff's RFC, it is plaintiff who bears the burden of proving her RFC, *i.e.*, she must establish through evidence that her impairments result in functional limitations and that she is "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). *See also Pearsall v. Massanari,* 274 F.3d

1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations). The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's RFC determination.

**B. Credibility Analysis**. Carroll next argues that the ALJ failed to properly assess her credibility. As explained below, the ALJ did not fully credit Carroll's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected

9

to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

At the administrative hearing, Carroll testified that knee pain and COPD are the reasons she cannot work.  (R. 44).  The ALJ thoroughly detailed the medical evidence and discussed her testimony.  The ALJ acknowledged that Carroll has "medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision."  (R. 17).  If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief.  However, a review of the ALJ's analysis demonstrates that the ALJ properly considered and discredited Carroll's testimony.  Rather than give a synopsis of it, the court will quote it.

> The claimant engages in activities of daily living that are inconsistent with disabling pain or functional limitations.  She admits she gets her children ready for school and her daughter is totally dependent on her to dress her.  The claimant indicated she lives alone, takes her medications, gets her children ready for school, does small tasks, provides care for her disabled daughter, takes care of pets, takes care of her personal needs, makes sandwiches and frozen meals, cooks a full meal sometimes, does laundry, sweeps, mops,

drives, goes out alone, shops, pays bills (Exhibit 6E).  The medical evidence fails to support significant limitation of activities of daily living since the claimant has no muscle atrophy, full strength, good range of motion of extremities, normal reflexes and sensations, and normal gait.  The claimant testified medication makes her drowsy, disoriented and nauseous sometimes.  However, the medical records reveal no complaints of medication side effects.  There is no medical evidence to support a need for other medical treatment, aggravating and precipitating factors or need for other measures to alleviate symptoms.

The undersigned finds the claimant is not a reliable witness based on her unsupported and inconsistent allegations.  The claimant testified on bad days she takes pain pill (sic) and lies in bed all day.  However, she also testified she gets her children to school and sponge bathes her daughter even on bad days.  The claimant testified she cannot work due to knee pain and COPD.  Yet, the objective medical evidence show the claimant was alert, fully oriented, and in no acute distress.  She was ambulatory without an assistive device.  She did not have significant loss of knee motion and no evidence of knee instability, effusion, warmth or deformity.  At first the claimant testified the cane is prescribed.  However, later the claimant conceded that the cane is not prescribed and is only used occasionally.  The claimant's impairments likely cause some pain and limitation of function, which is addressed by the assessed residual functional capacity.  However, the objective medical evidence simply does not support disabling pain, or physical and mental limitations.  The claimant's ability to maintain her household, care for herself, her young son and her disabled adult child are inconsistent with disabling mental or physical impairments.

*       *       *

In sum, the above residual functional capacity assessment is supported by type of impairments, surgical history and objective mental and physical signs.  It adequately addresses the claimant's subjective complaints of pain and functional limitations in light of the objective observations.  The claimant asserts disabling pain; however, examinations show she was alert, oriented and in no acute distress.  She asserts inability to stand/walk for long periods; however, she has no joint instability, loss of muscle tone, or loss of strength, reflexes or sensation.  She has no significant loss of bilateral knee range of motion and no tenderness, warmth or effusion. Despite some history of

wheezes, she continued to smoke until three months prior to the hearing.  The consultative examinations show clear lungs without wheezes.  The record fails to show any respiratory distress or need for breathing treatments during medical visits.  Although the claimant alleges disabling depression, she take (sic) only medication prescribed by physical treating source that she did not see from May 2012 until March 2013 and not since then.  The examinations show no significant mental signs and no abnormal mood and affect.  The mental health clinic records show only one assessment and one therapy session.  In addition, the claimant maintains her household, takes care of her son, takes care of her disabled adult daughter, manages finances, shops, drives, interacts with neighbors and interacts appropriately with all medical sources.

(R. 21-22, 23-24).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"  *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision."  *Holt*, 921 F.2d at 1223.  Relying on the treatment records, objective evidence, and Carroll's own

testimony, the ALJ concluded  that her allegations regarding the extent of her pain were not credible to the extent alleged and discounted that testimony.  After a careful review of the ALJ's careful, detailed and thoughtful analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.  It is undisputed that the plaintiff suffers from pain.  However, the ALJ concluded that while Carroll's underlying conditions are capable of giving rise to some pain and other limitations, her impairments are not so severe as to give rise to the disabling intractable pain she alleged.

The medical records support the ALJ's conclusion that while Carroll's impairments could reasonably be expected to produce some pain, the records do not corroborate her testimony of debilitating pain.  On December 17, 2008, Carroll presented to Dr. Thornbury complaining of pain, swelling and stiffness in both knees. (R. 266).  A physical examination revealed

> multiple nodular lesions around both knees.  She has a mild effusion with some limited extension, upwards of 10 degrees in both knees.  Flexion is to about 130 degrees.  She is tender medially, retropatellarly, and has mild crepitus to range of motion in both knees.  She has no gross medial, lateral, anterior, or posterior instability, negative Lachman sign, and pivot shift. She has a good bit of pain with a McMurray's-type maneuver, but no clunk or catch in either knee.

(R. 267).

Dr.Thornbury diagnosed "early degenerative arthritis with chondromalacia, medial compartment and probably patellofemoral also." (*Id*.).  He injected both knees with Depo-

Medrol and Xylocaine, and prescribed Relafen.  (*Id.*).

On January 19, 2009, Carroll returned to Dr. Thornbury complaining that she was having more pain and swelling in her right knee.  (R. 265).  An examination revealed "mild effusion" of the right knee, tenderness in the medial joint space and retropatellarly, and reduced range of motion.  (*Id.*)  Dr. Thornbury suspected "[p]ossible internal derangement of the right knee with a degenerative meniscal tear."  (*Id.*)  He ordered a MRI.  (*Id.*)

On January 29, 2009, Carroll again complained to Dr. Thornbury of pain and popping in her right knee.  (R. 264).  At that time, she had "a lot of tenderness retropatellarly, crepitus to range of motion, and medial and lateral joint line tenderness."  (*Id.*)   The MRI did not reveal a tear but indicated "mild to moderate osteoarthritis."  (*Id.*; R. 268).

On August 10, 2009, Carroll returned to Dr. Thornbury complaining of pain, swelling and stiffness in her right knee.  (R. 263).  On August 21, 2009, Carroll underwent arthroscopic surgery for "debridement of the patella femoral joint . . . [and] synovectomy." (R. 269).  Surgery revealed a "small tear in the posterolateral right meniscus" which was repaired.  (*Id.*).  On August 26, 2009, Carroll returned to Dr. Thornbury five days after her right knee surgery. (R. 262).  At that time, she had "absolutely no pain."  (*Id.*)  She had "minimal palpable tenderness."  (*Id.*)

On October 5, 2010, Carroll presented to Dr. Kenneth Taylor complaining of left knee pain.  (R. 279).  An examination revealed Carroll

ambulates with a moderate left antalgic gait.  She has no effusion or synovitis

14

of the left knee.  She has full extension of the left knee and 120 degrees of flexion.  There is moderate tenderness and a positive McMurray's sign of the medial joint line of the left knee.  Negative Lachman, negative drawer, and negative pivot shift sign.  She has not left patella tenderness, crepitus, or instability. No pain or instability is produced varus or valgus stressing of the left knee at 0 and 30 degrees.  There is no asymmetric atrophy of quadriceps musculature.  Neurovascular function of the lower extremities is intact.

(*Id*).

Dr. Taylor recommended an MRI to "[r]ule out internal derangement versus inflammatory process." (*Id*.).  On October 19, 2010, Carroll complained to Dr. Taylor of unchanged left knee pain.  (R. 278).  She "ambulates with a left antalgic gait" but there was "no effusion or synovitis of the left knee." (*Id*.).  A MRI "showed no internal derangement." (*Id*.).  Dr. Taylor diagnosed "[m]edial compartment gonarthrotis of the left knee." (*Id*.)

Carroll returned to Dr. Taylor on March 24, 2011 complaining of pain in her left knee.  An x-ray revealed "mild degenerative changes in the medial compartment of the left knee." (R. 277).  Dr. Taylor injected the knee with Dexamethasone and prescribed Toradol. (*Id*.)  On April 21, 2011, Dr. Taylor recommended a "left knee arthroscopic debridement." (R. 276).

On May 4, 2011, Carroll underwent arthroscopic surgery on her left knee.  (R. 284). Dr. Taylor repaired a partial tear of the medial meniscus and resected a portion of the medial synovial plica. (*Id*.).  On May 19, 2011, Carroll reported that she was only have "mild left knee pain." (R. 275).  She had full extension of her left knee. (*Id*.).

Thereafter, Carroll did not return to Dr. Thornbury or Dr. Taylor but on April 23,

15

2013, she complained to Dr. Sargent, her primary care physician of pain in both knees. (R. 443). The musculoskeletal examination revealed normal gait and station. Her lower right extremity was normal. Her left knee and lower leg had no edema, normal reflexes and normal pulses. (R. 446). She had moderate knee joint effusion but no masses or crepitation. (*Id*.). Dr. Sargent diagnosed bilateral osteoarthritis in the knee joints and prescribed Naprosyn. (R. 447). Thus, despite Carroll's complaints, after her 2009 right knee surgery and her 2011 left knee surgery, she did not complain again of knee pain until April 2013.

After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence. To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**C. Residual Functional Capacity**. Finally, Carroll asserts that the ALJ failed to include the nonexertional limitation of pain in his residual functional capacity assessment. (Doc. # 18 at 13). The ALJ concluded that the plaintiff has the residual functional capacity

> to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b).
> except the claimant can sit at least three hours without interruption and a total
> of at least six hours over the course of an eight-hour workday. The claimant
> can stand and/or walk for at least one hour without interruption and a total of
> at least six hours over the course of an eight-hour workday. The claimant can

16

frequently use her lower extremities for pushing, pulling and the operation of foot controls. The claimant can occasionally use her upper extremities to push and pull while standing/walking. The claimant does not suffer any additional limitation in the use of her upper extremities. The claimant cannot climb ladders, ropes, poles or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch. She cannot crawl. The claimant can occasionally work in humidity, wetness, and temperature extremes. The claimant can occasionally work in dusts, gases, odors, and fumes. The claimant cannot work in poorly ventilated areas. The claimant can occasionally work while directly exposed to vibration affecting her lower extremities. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant can occasionally operate motorized vehicles. The claimant cannot respond to rapid and/or frequent multiple demands.

(R. 16).

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level. If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *See also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments."). "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's

impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue,* 400 F. App'x 492, 494 n.2 (11th Cir. 2010).

Carroll's argument that the ALJ's RFC determination is flawed because it does not include any mention of pain is without merit. In determining Carroll's RFC, the ALJ specifically considered Carroll's limitations arising from her complaints of pain.

> In sum, the above residual functional capacity assessment is supported by type of impairments, surgical history and objective mental and physical signs. It adequately addresses the claimant's subjective complaints of pain and functional limitations in light of the objective observations. The claimant asserts disabling pain; however, examinations show she was alert, oriented and in no acute distress. She asserts inability to stand/walk for long periods; however, she has no joint instability, loss of muscle tone, or loss of strength, reflexes or sensation. She has no significant loss of bilateral knee range of motion and no tenderness, warmth or effusion

(R. 23-24).

It is undisputed that Carroll suffers from pain in her knees but as already explained, the medical records do not demonstrate that her pain is as severe as alleged. The ALJ took into consideration Carroll's pain by limiting her to light work, and the RFC adequately accounts for her knee pain. It is clear from the context of the ALJ's opinion, and from the record as a whole, that the ALJ reviewed and considered all the medical evidence in the record in determining Carroll's RFC. The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual

findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  Given this standard of review, the court finds that the ALJ's decision was supported by substantial evidence.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 19th day of January, 2017.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

19